IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

KURT COFANO,

*Defendant.*

Criminal No. 2:20-cr-154 - 1

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

A grand jury sitting in the Western District of Pennsylvania returned a five count Indictment against Defendant Kurt Cofano ("Cofano") on July 14, 2020. Cofano is charged with illegally possessing firearms and destructive devices in his vehicle and residence. (ECF No. 1). Currently pending before the Court is Cofano's Motion to Suppress. (ECF No. 31). Cofano has not requested an evidentiary hearing. Briefing is complete, and an evidentiary hearing is unnecessary for the Court's resolution of the motion as the material facts are not disputed.[1] For the following reasons, the Court will deny Cofano's motion.

---

[1] Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure permits defendants to file "motions to suppress evidence" before trial, but evidentiary hearings on such motions are not granted as a matter of course. To require a hearing, a suppression motion must raise "issues of fact material to the resolution of the defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir.1996). "A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (citations omitted). The United States Court of Appeals for the Third Circuit has emphasized that "the procedure for a defendant who seeks an evidentiary hearing on a suppression motion is to (1) state a colorable legal claim, (2) identify facts material to that claim, (3) show why the facts are disputed, and then (4) request a hearing to resolve the

# I.  STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend IV.  "It is well settled that the Fourth Amendment applies to seizures made for civil purposes, and the central inquiry is the same as in the criminal context-whether the government's conduct was reasonable under the circumstances." *Must v. West Hills Police Dept.*, 126 F. App'x 539, 542 (3d Cir. 2005) (citing *Doby v. DeCrescenzo*, 171 F.3d 858 (3d Cir. 1999)). *See also O'Connor v. Ortega*, 480 U.S. 709, 714-15 (1987).

The Third Circuit Court of Appeals has examined the constitutionality of an involuntary examination conducted pursuant to section 7302(a)(1) of the Pennsylvania Mental Health Procedures Act ("MHPA"), which authorizes the seizure of a mentally disabled person following the issuance of a section 7302 warrant, and concluded that the statutory scheme set forth in section 7302(a)(1) satisfies the requirements of the Fourth Amendment.  50 P.S. § 7302. Consequently, it is not unreasonable to temporarily detain an individual who is dangerous to himself or others. *Doby*, 171 F.3d at 871-72.

As reflected in the explicit language of the MHPA, the standard for evaluating the validity of a section 7302 warrant is whether reasonable grounds exist to believe that a person is severely mentally disabled and in need of immediate treatment:

---

dispute."  *Id.* at 108.  Here, Cofano has not requested a hearing.  Additionally, the Court finds that his motion does not raise a material fact or dispute the Government's version of events.  For purposes of evaluating and ruling upon Cofano's motion, the Court can treat the events described in the Whitehall Borough PD Incident Report (ECF No. 34-1) and the Application for Involuntary Emergency Examination and Treatment (ECF No. 31-1) as true, and it will do so.

(a) Application for Examination.--Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

(1) Warrant for Emergency Examination.--Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.

50 P.S. § 7302(a)(1). Section 7301(a)(1) of the MHPA provides in pertinent part:

A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

50 P.S. § 7302(a)(1). Section 7301(b) sets out guidelines for the determination of when a "clear and present danger" to self or others is present:

(b) Determination of Clear and Present Danger.—

(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated ...

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) the person has acted in such a manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide; or

(iii) the person has substantially mutilated himself or attempted to mutilate himself substantially and that there is the reasonable probability of mutilation unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation.

50 P.S. § 7301(b)(1),(2).

"The guiding inquiry must be whether, when viewing the surrounding facts and circumstances, a reasonable person in the position of the applicant for a section 7302 warrant could have concluded the person was severely mentally disabled and in need of immediate treatment." *In re J.M.*, 726 A.2d 1041, 1049 (Pa. 1999). Reasonable grounds can be based on information received from third parties, and the applicant need not be correct in their belief that an individual is severely mentally ill and in need of treatment. *Id.* (citations omitted).

## II. FACTUAL BACKGROUND

The facts at issue as set forth in the Incident Report (ECF No. 34-1) and the Application for Involuntary Emergency Examination and Treatment (ECF No. 31-1) are not disputed for purposes of the suppression motion, and they are as follows.

A concerned citizen called the Whitehall Police Department ("WPD") on July 9, 2020 at 11:46 a.m. about a possible bomb threat and spoke with WPD Sergeant Budd. The citizen expressed "serious concerns about a former friend" –Cofano– who allegedly had developed a methamphetamine addiction. The citizen described videos, text message exchanges and social media posts by Cofano. The video and text messages were forwarded by the citizen to WPD. In the messages, Cofano stated that "the Kurt you knew died a year ago. What remains is a demon you don't want anything to do with." He encouraged "Kurt's friends" to stay away "unless you want to be detained in Guantanamo bay and water boarded by the CIA for information." If

people contacted his number, Cofano stated they "will be added to a list that the fbi will soon call

evidence." Cofano expressed a desire to die (e.g. "I've felt the desire to die for many months

now."; "I don't think I'll make it to my next birthday."; "I have a feeling that my life is nearing

its end."). He went on to state,

> The only thing I need to do is go out doing as much good as I can, and that's
> going to be taking a stand against a corrupt government that controls the greatest
> army ever built in the history of humanity. I'm going to show the world that there
> was one mother fucker left in this nation that still believed "in the land of the free
> and the home of the brave." It may be the last heroic act this pathetic nation ever
> witnesses.

Cofano also referenced being in a park and having a long drive – "4 fucking hours" – "back to

his old fucking house in Pittsburgh." Cofano went on to state that "if my unemployment doesn't

come in tomorrow, I'm going to drive to Harrisburg and kill everyone in the treasury department

and get gunned down by the police." If his unemployment did come in, Cofano stated, "I'm

driving to D.C. to take out as many mother fuckers at the CIA headquarters as I can before I'm

gunned down." Cofano also stated that "there's multiple life sentences in the trunk of my car."

Cofano mentioned "sleeping on the deck because there's 5 fish tanks full of rotting fish in my

house. You have no idea how dark my life has become."

The videos contained images of Cofano mixing what appeared to be chemicals into

explosives as well as using a flame-thrower.

The citizen stated that he wouldn't "tread lightly" with Cofano who he described as being

extremely smart and heavily armed. Sergeant Budd then called the Pennsylvania State Police to

alert them of the situation with Cofano. He learned that WPD had confronted Cofano at his

residence approximately a month earlier – on June 2, 2020 – about threatening social media

posts. At that time, Cofano assured officers that he was only "venting." The FBI was also

involved.  Sergeant Budd relayed all the information he obtained to an FBI agent and an ATF

agent.

Sergeant Budd then contacted Resolve Crisis Network, spoke with "Frank," and

requested a 302 Involuntary Emergency Examination and Treatment Warrant pursuant to the

MHPA.  Frank referred him to the Allegheny County Department of Health and Human Services

delegate, Lindsay Gentino.  Ms. Gentino electronically sent him a copy of a Section 302 MHPA

Warrant.  Sergeant Budd completed the warrant.  When detailing the specific behavior within the

last thirty days supporting his belief that Cofano was a clear and present danger to others,

Sergeant Budd wrote:

> I received a video of [Defendant] apparently making a bomb and attempting to
> detonate it ---------- sent me screen shots of texts talking about bomb videos he
> put on social media.  Texts state he is now a demon and other delusional thinking.
> He reports he is making a list that the "FBI will use as evidence."  He is
> threatening to kill everyone in the Treasury Department and "get gunned down by
> police."  He also threatened to drive to DC and go to CIA headquarters to "take
> out" as many people as he can.  He reports life is "dark."  He stated "I won't make
> it to my birthday."  He stated "there are multiple life sentences in the trunk of my
> car."  He stated he planned to rob a bank.  Friend reports he is "heavily armed."  I
> received a picture of a machine gun in his home.  The state police talked to -----
> who also confirmed he was heavily armed.  ---- reports he is unpredictable and on
> methamphetamines. In June the state police called and said [Defendant] made a
> Youtube video threatening protesters.  He reported he was going to go to the next
> protest and do harm to protesters who looted or vandalized property.  Police spoke
> with [Defendant] and he confirmed making the video.  He is known to the police
> from several reports.  ----------- reported suicidal texts in February.  Reporting he
> had several guns in his home.  He was making suicidal and homicidal threats.  He
> has been arrested in the past for assault.  We have also been involved when he
> made suicidal statements to -------.  I don't know his mental health history.

Sergeant Budd paper signed the warrant and faxed it to Ms. Gentino.  The warrant was

electronically signed by Ms. Gentino at 2:16 p.m.

A regional BOLO was issued for Cofano at 3:03 p.m. within a 50 mile radius.  After the

dissemination of the BOLO, Cofano's vehicle was observed on State Route 19 at 3:18 p.m.  A

traffic stop was conducted at the 1100 block of Washington Road in the Mt. Lebanon suburb of Pittsburgh. Cofano was taken into custody without incident at approximately 3:29 p.m. During the inventory search of his vehicle, suspected bomb making materials were discovered. The inventory search immediately ceased, and law enforcement officials obtained a search warrant for the vehicle. Numerous items were then seized from Cofano's vehicle.

### III. ANALYSIS

The Court's guiding inquiry as to a section 7302 warrant under the MHPA is whether, when viewing the surrounding facts and circumstances, a reasonable person in the position of Sergeant Budd could have concluded that Cofano was severely mentally disabled and in need of immediate treatment. Notably, Sergeant Budd did not need to be correct in his belief that Cofano was severely mentally disabled and in need of immediate treatment. The Court's review of the record compels the conclusion that Sergeant Budd had reasonable grounds to believe that Cofano was mentally disabled and in need of immediate treatment, as required for a warrant to be issued pursuant to section 7302 of the MHPA. Cofano was properly taken into custody for the purpose of an emergency mental health evaluation.

As recounted above, Sergeant Budd had ample evidence indicating that Cofano posed a clear and present danger of harm to others and to himself. A former friend and concerned citizen expressed his concern regarding Cofano's mental health. Added to that, Cofano's text messages, videos, and social media posts spoke to his desire to die as well as to harm others. Sergeant Budd learned that Cofano was known to be heavily armed and he was captured in a video making explosives. Sergeant Budd also learned that Cofano had been approached the previous month about a video threatening protesters. The statutory standard of reasonable grounds, as

provided for in section 7302, was satisfied.  Of particular note to the Court is that Cofano does not argue otherwise in his motion.

Instead, Cofano argues that the section 7302 warrant was invalid because it was procedurally flawed.  The Court finds Cofano's argument unavailing.  First, it matters not that Sergeant Budd, in his quest to quickly obtain the warrant, omitted the dates and times of the actions taken by Cofano.  A section 7302 warrant may be issued upon a showing that the conduct in the preceding 30 days demonstrates that the person is a danger to themselves or others. Sergeant Budd clearly outlined actions of Cofano that occurred within 30 days of the date he sought the warrant - July 9, 2020.  He went so far as to specify information that was outside of the lookback period – in June and February.  Second, the Court finds that the section 7302 warrant was signed by an appropriate official.  By signing the warrant, Ms. Gentino represented that she had the authority conferred to do so.  The Court is unwilling to accept Cofano's unsupported assertion that she had no authority to sign the warrant.  The implementing regulations of the MHPA provide for delegation of authority by the county administrator to issue mental health warrants, *see* 55 Pa. Code § 5100.21(d), and Cofano has failed to come forth with any persuasive evidence that Ms. Gentino had no authority under the MHPA to act as a signatory.

Lastly, the Government has raised the good faith exception to the warrant requirement. Even if the Court were to conclude that the section 7302 warrant was defective or that Ms. Gentino lacked a substantial basis for issuing the section 7302 warrant - which it does not - the evidence obtained during the apprehension of Cofano and ensuing search of his vehicle is nevertheless admissible under the good faith exception to the exclusionary rule.  The good faith exception instructs that suppression of evidence "is inappropriate when an officer executes a

8

search in objectively reasonable reliance on a warrant's authority." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. *United States v. Leon*, 468 U.S. 897, 922 (1984); *Williams*, 3 F.3d at 74. However, there are situations in which an officer's reliance on a warrant would not be reasonable and would trigger the exception. The Third Circuit Court of Appeals has identified four such situations:

> (1) [when] the [ ] [issuing authority] issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) [when] the [ ] [issuing authority] abandoned his judicial role and failed to perform his neutral and detached function;
> (3) [when] the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or
> (4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Hodge*, 246 F.3d 301, 308 (2001). The good faith exception requires objectively, not subjectively, reasonable conduct. *Leon,* 468 U.S. at 919–20 & n. 20.

None of the four situations listed above are implicated by the facts of this case. The Court has already concluded that sufficient information existed that Cofano was severely mentally disabled and in need of emergency treatment. Even if the section 7302 warrant was not sufficiently supported in this regard, the Court cannot conclude that it was so facially lacking that any responsible executing officer would have realized that it, and that any stop and seizure of Cofano pursuant to it, was invalid. There is simply no record basis that would have supported or mandated the officers executing the section 7302 warrant to call into question its legal validity. The officers engaged in objectively reasonable conduct by conducting a traffic stop of Cofano's vehicle, conducting an inventory search of his vehicle, obtaining a search warrant for the vehicle, and Cofano has not offered any evidence to the contrary.

Because the officers stopped Cofano pursuant to a section 7302 warrant relying on the issuing authority's finding that Cofano was dangerous to himself and others, they had valid Fourth Amendment justification. Consequently, the Court holds that the evidence cannot be suppressed as the good faith exception would indeed apply.

## IV.  CONCLUSION

For the aforementioned reasons of law and fact, the Court will deny Defendant's Motion to Dismiss (ECF No. 31). An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

February 26, 2021
Date