Exhibit "1"

# Bliss
PSYCHOLOGICAL SERVICES, LLC

22 Wabash St.
Lower Level, Suite 102
Pittsburgh, PA 15220

Telephone: (412) 780-8939
Facsimile: (412) 875-6543

## INDIVIDUAL PSYCHOLOGICAL EVALUATION

Case: United States of America v Kurt Cofano
Criminal No: 20.154

Name: Kurt Cofano
DOB: July 21, 1987
Date of Evaluation: March 31, 2021

Age at Evaluation: 33 years
Date of Report: May 14, 2021

### Introduction
This report contains confidential information. It should only be read by individuals whose need to know is specifically related to the case. This report often contains information provided by the examinee, and thus should not be considered "truth." However, where possible, corroborating data was also provided. It should be understood that all psychological conclusions are to a certain degree speculative, especially given the limited time allotted for the evaluation. These conclusions, along with any recommendations, need to be considered in conjunction with other data the Court receives during the trial.

### Identifying Information and Reason for Referral
Mr. Kurt Cofano is a thirty-three-year-old male who is currently at the Butler County Jail facing federal charges related to allegations that he had illegal or unlicensed firearms, was in possession of numerous weapons while on a controlled substance, and was making explosive devices. Mr. Cofano's attorney, Kerry Lewis, requested this evaluation in order to aid in determining Mr. Cofano's psychological functioning and treatment needs as they may relate to sentencing concerns and diminished capacity.

### Forensic Notification
Mr. Cofano was informed that the results of this evaluation would not be confidential, as they would be summarized in a report which would be provided to his attorney and potentially used in Court. He acknowledged that he understood this lack of confidentiality and verbally agreed to participate under this condition.

### Sources of Information
Mr. Cofano was individually interviewed for approximately one and one-half hours on March 31, 2021. Due to the Covid-19 pandemic, this evaluation occurred virtually via videoconferencing.

In addition to the clinical interview, the following psychological tests were administered:
- Minnesota Multiphasic Personality Inventory, Second Edition (MMPI-2)
- Clinician-Administered PTSD Scale for DSM-V (CAPS-V)
- Hare Psychopathy Checklist, Revised
- Miller Forensic Assessment of Symptoms Test (M-FAST)

In addition to the above direct contact, the following collateral information was reviewed:
- Western Psychiatric Institute and Clinic of UPMC (WPIC) Discharge Clinical Summary, dated July 9, 2020
- Indictment, dated July 14, 2020
- The Pennsylvania State Police investigation report leading to 302 warrant, dated August 19, 2020
- Report, authored by Mitigation Specialist Bianca D'Auria, dated March 24, 2021

**Relevant Information**
*Note: Unless otherwise indicated, all information in this section was provided by the examinee.*
**Family:** Mr. Cofano was raised in an intact family in Whitehall, Pennsylvania, prior to his parents' separation when he was nine years of age. Subsequently, he resided with his mother and visited his father every other weekend until he was thirteen years of age. At that time, he was expelled from his mother's school district and began residing with his father for the rest of his childhood and visited his mother monthly.

Mr. Cofano's mother remarried when he was thirteen years of age, and he described his stepfather as a "great guy." His father was engaged and had a child with the woman; however, he described their relationship as rocky and said that the woman was a violent alcoholic who he tried to avoid. The police were called on many occasions due to violence between his father and this paramour. This was consistent with his report to the Mitigation Specialist.

Mr. Cofano has a younger brother and a younger paternal half-brother. He denied that any of his family members have a history of mental health problems or substance abuse; however, his father was arrested, reportedly due to false accusations from the violent paramour. Mr. Cofano denied ever being physically or sexually abused or neglected, and child protective services were never involved with his family of origin. However, according to the report from the Mitigation Specialist, Mr. Cofano reported to her that his mother previously punched him in the face and pushed him down the stairs, resulting in a chipped tooth, because she demanded excellence.

Currently, Mr. Cofano does not speak to anyone in his family, stating that his calls are monitored. Specifically, he stated that he has conversations that he needs to have with his family members, but these conversations need to be private due to having pending charges against him. Prior to his arrest, Mr. Cofano maintained yearly contact with his mother who relocated to Florida, quarterly contact with his father, and seldom has contact with his two brothers who he described as being busy and relocating often.

**Educational/Vocational:** In 2005, Mr. Cofano graduated from Bethel Park High School, where he was enrolled in the regular curriculum and maintained C-average grades. He said he was not interested in school, but he was never retained. Mr. Cofano was suspended approximately three times for fighting, all of which occurred in high school. He was also expelled from Baldwin High School in the tenth grade, due to being caught with a small amount of marijuana. While in school, Mr. Cofano was active on the football and wrestling teams.

Subsequent to high school, Mr. Cofano attended an apprenticeship and schooling to get into a union. After three years, he reportedly realized he was not utilizing his full potential, so he attended Community College of Allegheny County (CCAC) for two years, studying engineering. Although he reportedly received "straight-A's," he never completed this degree.

Mr. Cofano worked as an industrial pipe welder for the Steamfitters Local 449 Union. In 2010, he began working as a pipe welder for the oil and gas industries, travelling across the country. In 2018, he started

Cofano, Kurt
p. 3

his own business called Cofano Energy Services, building pipelines for oil and gas companies. However, about six months prior to his arrest, he was reportedly shorted millions of dollars by a customer, resulting in his filing for bankruptcy. This is consistent with information provided by witnesses in the police investigation report.

Mr. Cofano stated that he previously had been fired "lots of times" as a union welder, indicating this was typical in his line of work. Specifically, he said that he was fired for smoking cigarettes, calling his boss names, or telling his bosses that he knows more than them.

**Relationships:** Mr. Cofano has never been married or fathered any children. He met his first serious girlfriend online, and they began cohabiting after a few months of dating. They reportedly cohabited for approximately one year, prior to the relationship ending. According to Mr. Cofano, he was focused more on his business as it was beginning to decline, so the relationship "went south." He denied the presence of violence in the relationship, and the police were never involved. This is consistent with information provided to the Mitigation Specialist.

Prior to his arrest, Mr. Cofano was reportedly dating another woman who he met online. The relationship lasted for approximately six months prior to him going to jail and it ended at that time. He denied the presence of violence or police involvement in that relationship as well.

**Drugs and Alcohol:** Mr. Cofano reportedly first consumed alcohol at fifteen years of age and has not done so since his mid-twenties, reportedly due to alcohol making him feel nauseated.

Mr. Cofano reportedly first used marijuana at thirteen years of age. He began using it daily at seventeen years of age until prior to his arrest. Mr. Cofano indicated that he was expelled from school in tenth grade due to being caught with a small amount of marijuana. He also attended rehab twice in high school, the first due to that expulsion and the second due to testing positive for marijuana while on probation. Despite these negative consequences related to marijuana use and substance abuse treatment for his marijuana use, he continued to use it daily until prior to his arrest.

Mr. Cofano reportedly first used cocaine in his twenties and used it monthly until he was twenty-five years of age. He used psychedelic mushrooms once or twice in his early twenties. Mr. Cofano denied using any other illicit substances, despite his father indicating to numerous official sources that he was using cocaine and methamphetamines. He indicated that he is unsure why his father would claim that, stating that perhaps his father believed it would get him out of trouble. According to the father's account to the Mitigation Specialist, he saw a glass pipe and believes Mr. Cofano was using methamphetamines in order to work longer hours and do more business. Additionally, according to the investigative report, another witness (a friend, not the father) reported that Mr. Cofano started using methamphetamines and began acting paranoid around the time of the dissolution of his company.

**Legal History:** Mr. Cofano was first involved with the legal system as a juvenile, when he was seventeen years of age. He stated that he was at a party with his brother, and several peers began physically assaulting his brother. As a result, he began to fight them; however, he was ultimately placed on juvenile probation. Mr. Cofano violated his probation when he tested positive for marijuana.

Mr. Cofano denied ever being involved with the criminal legal system as an adult prior to the current charges, and this appears consistent with information available through online public legal records as well. However, according to WPIC records, they stated that the 302-warrant indicated he was arrested in the past for assault. No further details are provided.

Cofano, Kurt
p. 4

Mr. Cofano was arrested on July 9, 2020 and charged by Mt. Lebanon Police Department with Weapons of Mass Destruction, Arson-Possession of Explosive or Incendiary, Possession of Instruments of Crime, and Prohibited Offensive Weapons. He was initially committed to the Allegheny County Jail. On July 14, 2020, a federal grand jury returned a five-count indictment against Mr. Cofano, charging him with two counts of Possession of Unregistered Destructive Devices, two counts of Possession of Firearms by an Unlawful User of Controlled Substances, and one count for making destructive devices. He is awaiting trial at the Butler County Jail. Regarding the current alleged offenses, the investigation report stated that somebody reported that Mr. Cofano may be planning to carry out a mass shooting. He apparently has been in the process of making nitroglycerine in his home and has a "bevy of automatic weapons and a stockpile of ammunition." It also reported that he informed someone that he was going to drive to Harrisburg to attack the Treasury department, due to not having received an unemployment check and then was going to attack the CIA prior to getting "gunned down" by police. The investigation report indicated that he was interviewed one month prior due to threats of the possibility of shooting protestors, but both the police and the FBI found the threat to not be credible.

When asked during the current evaluation, Mr. Cofano stated that he has been a firearm enthusiast his whole life, and he has a $40,000 legally obtained firearm collection. He also had a permit to carry concealed. However, he reportedly began to build firearms to sell for money when the pandemic began, as guns were harder for people to acquire. Reportedly, two guns out of his entire collection were then considered to be illegal and in need of a special permit. When asked specifically about the allegations regarding explosives, he stated that one of his prior subcontractors used explosives to dig trenches for pipelines, and he began studying the process of making explosives as he saw it as a lucrative business for these purposes. He considers one of his biggest regrets to be having made an off-the-cuff remark to a friend, which was called in and reported to police. Specifically, he stated that he was living in his car, had told his ex-paramour that his life was really dark, and he said something to a friend jokingly about blowing up the treasury. However, the police reports indicate that he also made such comments on social media as well. Mr. Cofano indicated that they tried to use his statements to make him into a bad guy, and they found a notebook in his closet from approximately one decade prior, which had a "patriotic sticker" on it. When asked, he said that the sticker said, "the tree of liberty must be replenished from time to time with the blood of tyrants."

Mr. Cofano denied having any disciplinary actions while incarcerated.

**Trauma:** Mr. Cofano denied ever being physically or sexually abused or neglected. He reported witnessing domestic violence between his father and his father's former paramour, who he described as a violent alcoholic. Mr. Cofano's primary trauma in his life appears to be the loss of his company, during which time he lost his company, his money, his house, and his paramour all at once. Although he experienced significant symptoms of depression and anxiety related to these losses, he did not endorse symptoms consistent with a full diagnosis of PTSD.

**Mental Health History:** Mr. Cofano has never previously received mental health treatment. He has never been psychiatrically hospitalized or prescribed psychiatric medications. Mr. Cofano reported experiencing significant depressive symptoms when his company went bankrupt. Indeed, he said that he went from being the CEO of a million-dollar company to living in a hammock with his dog in the woods. He lost his job, his house, his money, and his paramour all during that time. He told the Mitigation Specialist that he refused to live with his grandparents because it was "beneath him." Mr. Cofano stated that his symptoms included increased irritability, helplessness, feeling desperate and like he was drowning, and experiencing daily suicidal ideation with specific plans to shoot himself. The only thing that stopped him was not wanting his grandparents to attend another funeral; however, he believes he would have definitely committed suicide at some point had he not been arrested. When asked why he had not sought out therapy during his lowest point in his life, Mr. Cofano said, "Therapists cost money, ma'am. Some people search

Cofano, Kurt
p. 5

their house for coins for food. I didn't even have a house to search." Mr. Cofano denied ever experiencing auditory or visual hallucinations.

According to family interviews with the Mitigation Specialist, months prior to his arrest, Mr. Cofano came to family functions discussing conspiracies and watching YouTube videos. He also reportedly exhibited anger about work, pressured speech, weight gain, mood swings, and paranoia two to three years prior.

When he was first arrested, Mr. Cofano was initially taken to Western Psychiatric Hospital. According to him, he sat in the waiting room but was never evaluated or admitted. According to the 302 Petition filed by the Whitehall Police Department on July 9, 2020, the police received a video of Mr. Cofano apparently making a bomb and attempting to detonate it. They also received screenshots of texts talking about bomb videos he put on social media. The texts stated that he is now a demon and other apparent delusional thinking. He reportedly was making a list that "the FBI will use as evidence" and was threatening to kill everyone in the Treasury Department and "get gunned down by police." He threatened to drive to the CIA headquarters in Washington, D.C. and "take out" as many people as possible and stated that he planned to rob a bank. In June, the state police called and said he was making a YouTube video threatening protestors.

According to the Discharge Summary from WPIC following that 302 petition, Mr. Cofano was diagnosed with an Unspecified Bipolar and Related Disorder, as well as a Rule Out of Amphetamine (or other stimulant)-Induced Bipolar and Related Disorder, with Moderate or Severe use, though they indicated that their knowledge of him using methamphetamine is based on information from his father in the 302. They reported that he initially went on a ten-minute tangent about the failure of his company and his life before even being asked a question. When discussing the allegations against him, he went on a tangent about the dissolution of America and how statues are being pulled down and "drag queen happy hour instead of history" is being taught in schools. He showed pressured and tangential thoughts and speech, some grandiosity and paranoia of unclear delusionality, but did not appear to be responding to any internal stimuli. It was opined that he was at imminent risk of harm to self and others and is therefore appropriate for inpatient psychiatric treatment on a locked unit for evaluation and safety; however, the report indicates that he was ultimately discharged due to WPIC learning that there was a warrant for his arrest and having concerns about the inability to keep him safely there, due to police's concern that he could remotely detonate a bomb from the phone. As such, they recommended that he obtain mental health services via Allegheny County Jail.

Mr. Cofano denied receiving any mental health services or medications while incarcerated, stating, "I like to be clear headed."

**Medical History:** Mr. Cofano reported that he is allergic to peanuts, so "when a restaurant sneaks in peanuts, I go to the hospital." He has had three outpatient knee surgeries due to hurting his knees doing BMX as an adolescent and construction as an adult. Mr. Cofano denied experiencing any traumatic brain injuries resulting in loss of consciousness or concussions. He has asthma, for which he takes an inhaler as needed.

**Interview and Behavioral Observations**
Mr. Cofano's evaluation began slightly delayed due to technological issues at the jail. After we began, he was fairly polite and cooperative with the evaluation. He referred to the evaluator as ma'am, answered the evaluator's questions with minimal need for prompts, and was seemingly open and honest about most information. However, Mr. Cofano often smirked throughout the evaluation and demonstrated narcissistic tendencies. While discussing the time-period in his life in which he lost everything, he exhibited pressured speech and was quite perseverative. Throughout the entirety of the evaluation, Mr. Cofano did

not appear to be responding to internal stimuli. Although he engaged in statements of grandiosity and some mild paranoia, no apparent delusions were noted. For example, what initially sounded like paranoia with regard to not speaking to his family members on recorded phones was later observed as just mild paranoia, as it was with fair logic that he has pending charges and does not want to self-incriminate.

Mr. Cofano was dressed in typical inmate clothing but otherwise appeared to have adequate hygiene. He sat with average posture and psychomotor activity was appropriate. He made adequate eye contact, and his facial expressions were typically mood congruent. No apparent abnormal movements or tics were noted. His mood was generally somewhat irritable, but affect was normal and congruent to mood and topics discussed. As stated, his speech became pressured when discussing the stressors in his life just prior to arrest, and his thoughts were fairly perseverative on those stressors and losses. Ruminating was evident. Otherwise, he was able to speak and show appropriate thought patterns during separate topics of the evaluation. Mr. Cofano was oriented to time, person, and place. He appeared alert and attentive to the evaluation, and no memory impairment was noted. Insight and judgment were poor.

## Testing Results

The use of psychological tests and measures in psychological evaluations can provide an empirical foundation for interpretation of data. They are used to measure personality functioning and other individual factors that may impact the referral question. However, the psychological test interpretations are hypotheses and are never to be considered valid in isolation, but only, as here, when they are supported by additional information and observed behavior of the party in this case. Personality test results reflect characteristics of persons who have provided test response patterns similar to the current individual, and thus should be interpreted cautiously.

### The Minnesota Multiphasic Personality Inventory, Second Edition (MMPI-2)
*The MMPI-2 is a self-report measure with validity scales to assess test-taking attitude, veracity of information, and consistency of responding. It also assesses a wide range of psychopathology and personality dynamics, and many of the items can address inhibition versus impulsivity. Finally, amenability to treatment can also be addressed by the MMPI-2.*

Mr. Cofano responded to the MMPI-2 in a particularly cautious and deliberate way, showing resistance to the testing procedure. However, he did not appear to be defensive or under-reporting, and the results are likely valid. His willingness to admit to some psychological distress is a good sign for treatment prognosis.

Mr. Cofano's resulting clinical profile is consistent with someone who is intelligent and independent. However, they are often severely neurotic, moody, dissatisfied, and unpredictable. They typically have serious psychopathology and are impulsive and easily bored. These individuals typically admit to using non-prescription drugs. They are reporting feeling fear, depression, apathy, and a desire to be dead.

Interpersonally, individuals with similar profiles to Mr. Cofano's tend to be seen as socially or politically deviant. They show a resentment of societal or parental standards, have definite opinions about right and wrong, and stand up for their own beliefs. These individuals often describe others as selfish, dishonest, and opportunistic, so they feel justified in behaving in similar ways. They also derive vicarious satisfaction from the manipulative exploits of others.

### Clinician-Administered PTSD Scale for DSM-5 (CAPS-5)
*The CAPS is the gold-standard in PTSD assessment. It is a 30-item structured interview that can be used to make current (past month) diagnoses of PTSD, as well as to evaluate a person's prior PTSD symptoms during the period of time in which their symptoms were the worst. Questions assess the 20 DSM-5 PTSD symptoms, targeting the onset and duration of symptoms, subjective distress, impact of symptoms on*

*functioning, overall response validity, overall PTSD severity, and specifications for the dissociative subtype.*

Mr. Cofano's answers on this measure indicate that he **does not currently** meet criteria for a DSM-V diagnosis of PTSD at this time, related to the bankruptcy of his job, homelessness, and other related stressors. However, he was just below the level needed for such a diagnosis to be made. Indeed, The DSM-5 diagnostic rule requires the presence of at least one Criterion B symptom (intrusion symptoms), one Criterion C symptom (avoidance symptoms), two Criterion D symptoms (cognitions and mood symptoms), and two Criterion E symptoms (arousal and reactivity symptoms), as well as Criteria F (duration of disturbance) and G (distress or impairment) to be met. Mr. Cofano's answers resulted in one Criterion B symptoms (cued psychological distress), no Criterion C symptoms, three Criterion D symptoms (strong negative beliefs about others/the world, distorted cognitions about the cause or consequences of the trauma, persistent negative emotional state), and two Criterion E symptoms (irritable behavior and angry outbursts, reckless or self-destructive behavior). Criterion F and G were also both met. As such, if he had one Criterion C symptom, he would have met full criteria for a PTSD diagnosis.

**Hare Psychopathy Checklist-Revised, Second Edition (PCL-R, Second Edition)**
*The Hare PCL-R, Second Edition, is a 20-item scale for the assessment of psychopathy in forensic populations. It is considered the definitive resource in assessing psychopathic personality. The PCL-R has been found to be predicative of risk of future aggressive acting out.*

Mr. Cofano does not demonstrate traits of psychopathy to a significant degree. His total score of 9 is considered to be lower than average for male offenders. When assessing his specific psychopathic traits, Mr. Cofano has a grandiose sense of self-worth. He also has shown some history of proneness to boredom, manipulativeness, lack of remorse, poor behavioral controls, lack of realistic long-term goals, impulsivity, and failure to accept responsibility for his own actions.

**The Miller Forensic Assessment of Symptoms Test (M-FAST)**
*The M-FAST is a test used to examine unusual symptoms in others and the possibility of malingering symptoms.*

On this measure, Mr. Cofano obtained a total raw score of 2. Although there were some minor unusual symptoms that he endorsed, his scores are not consistent with significant malingering of mental health problems.

**Diagnosis:**   Post-Traumatic Stress Disorder (provisional)
Unspecified Bipolar and Related Disorder
Narcissistic Personality Disorder
Cannabis Use Disorder, Moderate, In a Controlled Environment
Stimulant Use Disorder, Mild, In a Controlled Environment (provisional)

## CONCLUSIONS AND RECOMMENDATIONS

Mr. Kurt Cofano is a thirty-three-year-old male who is currently at the Butler County Jail facing federal charges related to allegations that he had illegal or unlicensed firearms, was in possession of numerous weapons while on a controlled substance, and was making explosive devices. Mr. Cofano's attorney, Kerry Lewis, requested this evaluation in order to aid in determining Mr. Cofano's psychological functioning and treatment needs as they may relate to sentencing concerns and diminished capacity.

Mr. Cofano meets criteria for multiple psychological diagnoses at this time. According to his mother, he had a period of pressured speech, increased irritability with work, paranoia, and mood swings in approximately 2016. His father reported noticing an increase in paranoia and delusional thinking more

Cofano, Kurt
p. 8

recently, just prior to his arrest. During his evaluation at WPIC, the doctor opined that he met criteria for either an Unrelated Bipolar Disorder or a Stimulant-Induced Bipolar Disorder, as they noted pressured speech, perseverative thinking, irritability or agitation, suicidal ideation, and potential delusional thoughts. Even during the current evaluation, when he was much less likely to be on drugs, perseverative and ruminating thoughts and pressured speech were evident, as was irritability. However, Mr. Cofano also endorsed experiencing depressive symptoms at different times in his life, most notably after the loss of his job and his house. As such, he meets criteria for a diagnosis of Unspecified Bipolar Disorder.

Stressful life events do not cause mental health disorders like Bipolar Disorder; however, they can certainly exacerbate them. To better understand Mr. Cofano's mental health functioning and alleged criminal activities, one has to gain a broader understanding of his life and development. Mr. Cofano reportedly grew up with a father who was always trying to be a successful entrepreneur but often failed. He reportedly viewed the failure of his parents' marriage as a direct result of his mother being unhappy with his father's failures. He also reportedly experienced a great deal of pressure from his mother to be successful himself. As such, Mr. Cofano always placed great importance on success. Mr. Cofano demonstrates many personality traits consistent with Narcissistic Personality Disorder (NPD). He shows a pervasive pattern of grandiosity and need for admiration, dating back to at least adolescence. Mr. Cofano exaggerates his achievements and talents and expects to be recognized as superior to others, he is preoccupied with fantasies and thoughts of unlimited success or power, and he has a sense of entitlement. Mr. Cofano shows arrogant and haughty behaviors and attitudes. Collateral records, clinical impressions, and testing results from the MMPI-2 are consistent with this diagnosis. In understanding Mr. Cofano, one needs to consider these personality traits. Individuals with NPD typically require excessive admiration, and their self-esteem is typically very fragile. This makes them overly sensitive to injury from criticism or defeat, leaving them feeling humiliated or empty. As a result, they may react with disdain, rage, or counterattack. NPD can be associated with mood disorders in that periods of shame or humiliation can lead someone into a depressive episode, while feelings of grandiosity can be associated with a hypomanic episode.

Mr. Cofano's loss of his job, his paramour, and his house was such a significant hit to him that it did more than just leave him feeling humiliated or empty. Indeed, according to the CAPS-5 testing results, Mr. Cofano almost met full criteria for a diagnosis of PTSD related to this event in his life. As such, a provisional diagnosis of PTSD was made. As a result of what was perceived by him to be a life-threatening and humiliating trauma, Mr. Cofano experienced cued psychological distress, strong negative beliefs about others and the world, distorted cognitions about the cause or consequences of the trauma, persistent negative emotional state, irritable behavior and angry outburst, and reckless or self-destructive behaviors.

With all of the above conclusions in mind, and subject to natural limitations that apply to psychological evaluations, it is my opinion, based on a reasonable degree of psychological certainty, that when considered together, Mr. Cofano's Bipolar symptoms, exacerbated by the losses in his life, his narcissistic personality traits making such losses unmanageable, and his subsequent PTSD symptoms greatly contributed to Mr. Cofano's behaviors just prior to his arrest. At that time, he had a diminished ability to understand the wrongfulness of his behaviors, feeling justified in such behaviors due to his personality traits, delusional thinking, and perseveration/rumination on the wrongfulness of what was happening in his life. He was unable to absorb information in a typical way and had a significantly impaired ability to control his behavior, even if he knew it was wrongful. There is naturally a question in this case as far as how much drugs were a factor, as the records indicate methamphetamine use at the time, which he denies. However, such cognitive distortions and lapses in his judgment were not entirely caused by drug use, as he continues to show some signs of these mental health problems while incarcerated. Naturally, none of this excuses his alleged illegal behaviors but is offered in attempts to better understand or conceptualize how he may have made such decisions.

As such, with all of the above conclusions in mind, the following recommendations are made:
1.) Mr. Cofano requires intensive trauma-based counseling, focused on exploring his trauma-based symptoms subsequent to the loss of his business and house. There is good research on the effectiveness of treating PTSD; however, it is necessary to receive such treatment, as the PTSD does not typically just dissipate on its own. It is important for him to receive this counseling regardless of sentencing (that is, in the community, prison, or another placement). His provider should be someone competent in working with people with personality disorders, and they should address maladaptive personality traits as well, such as the grandiose sense of self work, need for admiration or success, and the blow to his ego from the loss of his business. WPIC found grounds to involuntarily commit Mr. Cofano, only overturning it due to their own concerns about safety related to potentially detonating a bomb remotely. Despite their opinion that he met criteria for involuntary hospitalization and their subsequent recommendation that he receive mental health treatment from ACJ, it is my understanding that Mr. Cofano has never received that necessary treatment.
2.) Mr. Cofano also needs to receive psychiatric medication management and take medications as prescribed, as psychotropic medications are the front-line treatment for mood disorders, such as Bipolar Disorder. Also, Mr. Cofano reported experiencing extreme suicidality prior to his arrest, as well as some lingering mild suicidal ideation at this time. Medication and therapy could further help this, and his suicidality should be continually monitored and addressed as needed. Again, this needs to occur regardless of sentencing or placement.
3.) Mr. Cofano should also receive substance abuse treatment, the rate and mode of which should be determined by someone who specializes in drug and alcohol evaluations and treatment. This is primarily recommended due to the allegations of abuse of amphetamines at the time of arrest, which would certainly negatively impact symptoms of narcissism and mania; however, even with his denial of such substances, he admits to daily use of marijuana throughout most of his life, despite negative consequences related to his use.
4.) Finally, he needs help restarting his life and obtaining a stable occupation when he completes his sentencing and is released into the community, in order to decrease the risk of future mood disorders, suicidality, or related irritability and potential violence.

Respectfully submitted,

*Beth A Bliss, PsyD*

Beth A. Bliss, Psy.D.
Licensed Psychologist
License Number PS017743