IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.   Criminal No. 2:20-cr-154

KURT COFANO

FILED
OCT 27 2021
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## Sentencing Memorandum and Motion for Downward Variance

AND NOW, comes the Defendant, Kurt Cofano, and files the within Sentencing Memorandum as an addendum to the information presented in the Pre-Sentence Investigation Report which has been filed by the Probation Department in this case. This Memorandum and the accompanying Motion will also provide grounds for a downward departure from the Sentencing Guidelines.

The Defendant stands before this Court for sentencing, having entered a guilty plea to the above Indictment. The purpose of this Memorandum is to acquaint the Court with relevant factors regarding the Defendant's background and the circumstances which brought him into the criminal justice system and before this Court, and to offer information relating

page 1 of 11

to sentencing issues and options which, in the Defendant's view, would best satisfy the interests of the community and the offender. Notwithstanding any of these assertions, the Defendant has fully accepted both culpability and moral responsibility.

## Offender's Background

The Presentence Investigation Report (PSI) contains considerable biographical information about the Defendant, his personal history, and the details of this case currently before the Court. There are no additional biographical facts that will assist the Court in making the critical determination of the nature and scope of the sentence that should be imposed in this case and for this offender.

## Legal Argument

From the PSI, this Court is familiar with the background of the Defendant, his family and work history, and the extent of his criminal record. It is that background, together with the Defendant's mental and emotional health conditions, as well as the arduous conditions of the Defendant's pre-sentence confinement, that warrants a very substantial

departure from the Sentencing Guidelines.

## I. Sentencing Under 18 U.S.C. § 3553(a)

### A. Legal Argument as to Limited Weight of Guidelines

In the wake of the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L. Ed. 2d 621 (2005), finding the mandatory application of the U.S. Sentencing Guidelines unconstitutional and ruling that the Guidelines may only be used in an advisory fashion, the government has taken the position that the court must still give "heavy weight" to the Guidelines in accordance with the opinion of the court in United States v. Wilson, 350 F. Supp. 2d 910, 925 (D. Utah 2005.)

The Defendant, respectfully, submits that this approach is incorrect. The better methodology, and that more consistent with the mandate of Booker, is set forth in United States v. Ranum, 353 F. Supp. 2d 984 (E.d. Wis. 2005). In Ranum, the court explained that the "approach espoused in Wilson," and advanced now by the government, is "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and

the remedial majority in Booker directing courts to consider all of the §3553(a) factors. "It is impossible to reconcile great deference to the Guidelines with Booker's emphasis on considering the §3553(a) factors, the Ranum court noted, because the Guidelines explicitly forbid courts from considering many of those factors.

Thus, in the post-Booker approach to sentencing, the Court should be guided by §3553. The starting point for any sentence under the statute is the directive to "impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing. See §3553(a). Proceeding from this principle, the Court "must now consider all of the §3553(a) factors." Although the Guidelines are one of the factors to be considered under §3553(a), they "are not binding, and courts need not justify a sentence outside of them by citing factors that take the case outside of the 'heartland'." Instead, "courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the §3553(a) factors."

A number of other courts have agreed with the approach of the Ranum court. See eg., United States v. Nellum, 2005 U.S. Dist. Lexis 1568, at *1-2 (N.D. Ind. 2005)(quoting Ranum, 353 F. Supp. 2d. at 986)(stating that "many of the §3553 factors - such as the history and characteristics of the defendant, see §3553(a)(1) - are factors that the guidelines 'either reject or ignore'" and imposing sentence below advisory Guideline range); United States v. West, 383 F. Supp. 2d. 517 (S.D.N.Y. 2005); United States v. Myers, 427 F.3d 558 (S.D. Iowa 2005)("If presumptive, the Guidelines would continue to overshadow the other factors listed in §3553(a), causing an imbalance in the application of the statute to a particular defendant by making the Guidelines, in effect, still mandatory.")

The weight of authority thus supports the Ranum court's approach to sentencing, demonstrating that this approach more accurately embodies the letter and spirit of Booker. Accordingly, in crafting a sentence for this case that is "sufficient, but not greater than necessary," the Defendant believes that the Court should employ this methodology.

B. Application of §3553(a) Factors to this Case

The numerous factors outlined in §3553(a) can be summarized in three general categories: (a) the nature of the offense; (b) the history and character of the defendant; and (c) the needs of the public and the victims of the offense.

1) Nature of the offense

The Defendant acknowledges that the Defendant participated in the unlawful possession of firearms and destructive devices and that in so doing so the Defendant committed a serious crime. The Defendant understands the seriousness of the crime and the potential for great harm to others caused by this crime.

At the same time, the Defendant asks this Court to recognize that these offenses, albeit serious, are nevertheless regulatory offenses.

2) History and character of the defendant

The Defendant is a 34 year old Oil & Gas welder, former CEO of an Oil & Gas construction company who, before involvement in the current offense, was not involved in the commission of

crimes of any kind. The Defendant was a well regarded member of the community who, in creating a company that employed over 70 people, helped build the pipeline infrastructure necessary to allow America to claim energy independence for the first time in over 40 years. The Defendant has led an honorable and lawful life until this point and made but an isolated mistake in committing this crime.

3) <u>Needs of the public and victims of the offense</u>

In light of the Defendants age, history of gainful employment, no prior involvement in the criminal justice system, and the other factors referenced above, the likelihood of criminal recidivism is remote. (A copy of the Defendants Release Plan is attached and marked Exhibit "3")

C. <u>Requested Sentence</u>

Based on all of the above, the Defendant asks that the Court impose a sentence substantially below the range provided in the Sentencing Guidelines. Such a sentence would acknowledge the seriousness of the offense but take into account

the Defendant's history, character, and the other considerations discussed above.

## II. Additional Grounds for Downward Departure

There are, as mentioned above, two separate and additional grounds for a downward departure in this case. The Defendant separately addresses each ground.

### A. Defendants Mental and Emotional Health Conditions

The PSI mentions a psychological evaluation report dated May 14, 2021 based on an evaluation conducted by Dr. Beth Bliss, Psy. D. License Number PS017743. (PSI paragraph 58). At that time, the Defendant received a diagnosis of PTSD and additional diagnoses of unspecified Bipolar disorder, and narcissistic personality disorder. Dr. Bliss concludes that "based on a reasonable degree of psychological certainty, that when considered together, Mr. Cofano's Bipolar symptoms, exacerbated by the losses in his life, his narcissistic personality traits making such losses unmanagable, and his subsequent PTSD symptoms greatly contributed to Mr. Cofano's behaviors just prior to his arrest. At that time, he had a

diminished ability to understand the wrongfulness of his behaviors, feeling justified in such behaviors due to his personality traits, delusional thinking, and perseveration/rumination on the wrongfulness of what was happening in his life. He was unable to absorb information in a typical way and had a significantly impared ability to control his behavior, even if he knew it was wrongful."

This report makes it clear that the Defendant's mental and emotional health conditions were substantial factors in the commission of the crimes. For this reason alone, this Court is urged to reduce the offense level to a lower level.

B. Defendant's Pre-sentence Confinement Conditions

As has been widely chronicled, the pandemic has required extreme restrictions on prisoners' movements and visits. It has also exposed prisoners to heightened fears of contagion. Long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually arduous conditions merited recognition by courts in measuring the just sentence. See United States v. Carty, 264 F.3d 191, 196-97.

The same logic applies here. A day spent in prison under extreme lockdown and in fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing.

The Defendant has served 18 months of his sentence in pre-sentence confinement, and it has been under the extremely restrictive conditions required by the COVID-19 pandemic. This includes 203 days spent on lockdown (restriction to a two man cell for 23 hours per day). Nearly all of this time on lockdown has been spent in solitary confinement.

Furthermore, the pandemic restrictions have made it impossible for the Defendant to visit with family, access drug treatment programs, receive mental health counceling, or attend religious services.

Due to the pandemic, the Defendant has faced conditions of confinement unheard of for a non violent, first time offender inmate. Under such circumstances, an additional departure is warranted.

page 10 of 11

## Conclusion

For the foregoing reasons, the Defendant requests that the Court, upon its consideration of the factors set forth in 18 U.S.C. §3553(a) and the advisory Guideline range, regardless of the weight given to that advisory range, impose a sentence substantially below the recommended range of the Sentencing Guidelines.

Respectfully Submitted,

*Kurt Cofano*

Kurt Cofano
USMS # 04811-509
Butler County Prison
202 S Washington Street
Butler, PA 16001

Exhibit 3

## Release Plan

This release plan will outline how I will limit the likelihood of recidivism, protect the public from further crimes, and serve as evidence that I have taken the opportunity to rehabilitate during the past 18 months of incarceration.

Upon release from prison, I will:

1) Participate in a re-entry program (like the Renewal Center) to utilize the benefits of alternative housing.

2) Build a resume detailing a history of gainful employment - specifically 13 years experience as a certified master pipefitter and x-ray quality welder in the power generation, petrochemical, and oil+gas industries, as well as 2 years as Chief Executive Officer of Cofano Energy Services, LLC. (CES).

3) During the time I served as CEO of CES, I obtained valuable experience in construction project management, scheduling, accounting, estimating, marketing, brand development, sales, contract negotiation, and procurement. I will

page 1 of 2

## Release Plan (continued)

utilize this experience by applying for managerial positions in the petro-chemical and oil+gas industries. These positions include - but are not limited to - construction manager, project manager, brand development/marketing consultant, general foreman, area foreman, and fabrication foreman.

4) Secure position that enables me to generate sufficient income while fulfilling any obligations to the re-entry program and the United States Probation Office.

5) Save enough money to rent an apartment once released from the re-entry program. Apartment should be located on bus line as to provide transportation to and from place of employment.

6) Furnish apartment with necessary amenities.

7) Apply for credit card and take other steps to re-establish creditworthiness.

8) Purchase apropriate vehicle for transportation.

9) Resume law abiding lifestyle.

page 2 of 2