IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-154 |
| | ) | |
| KURT COFANO | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and Cindy K. Chung and Jonathan D. Lusty, Assistant United States Attorneys for said district, respectfully files the United States' Sentencing Memorandum as to the defendant, Kurt Cofano, in accordance with U.S.S.G. § 6A1.2. Based on an appropriate calculation under the advisory Sentencing Guidelines and a review of the applicable sentencing factors under 18 U.S.C. § 3553(a), the United States submits that the Court should impose a period of incarceration of between 57 to 71 months.

I. **PROCEDURAL HISTORY**

On July 14, 2020, a federal grand jury returned a five-count Indictment charging the defendant with two counts of Possession of an Unregistered Firearm/Destructive Device, in violation of 26 U.S.C. § 5861(d) (Counts One and Three), two counts of Possession of a Firearm by an Unlawful User of a Controlled Substance, in violation of 18 U.S.C. § 922(g)(3) (Counts Two and Five), and one count of Manufacturing a Firearm/Destructive Device, in violation of 26 U.S.C. § 5861(f) (Count Four). On August 13, 2020, the defendant pled not guilty to all charges in the Indictment. Following a detention hearing on August 26, 2020, the defendant was detained pending trial.

On July 27, 2021, the defendant pled guilty to two counts of Possession of an Unregistered

Firearm/Destructive Device, in violation of 26 U.S.C. § 5861(d), and one count of Manufacturing a Firearm/Destructive Device, in violation of 26 U.S.C. § 5861(f) (Counts 1, 3, and 4). At the change of plea hearing, the defendant agreed, in full, with the government's recitation of the offense conduct.

II. **SUMMARY OF OFFENSE CONDUCT**

On July 9, 2020, the Whitehall Police Department ("Whitehall PD") received information that the defendant had communicated that he was manufacturing explosives, threatening to "kill everyone in the treasury department" in Harrisburg and get "gunned down by the police," threatening that he would go to CIA (Central Intelligence Agency) headquarters in DC to "take out as many mother f*#$@s I can before I get gunned down," and indicating that he had "multiple life sentences in the trunk of my car." Accordingly, Whitehall PD sought and obtained a mental health commitment order ("302 warrant") for the defendant. Pursuant to the 302 warrant, members of the Mt. Lebanon Police department stopped the defendant's vehicle; they observed weapons in plain view inside.

Local police sought and obtained a search warrant for the vehicle and recovered, among other things, components for making destructive devices such as detonators, triggers, and fuses; short-barreled long guns; ammunition; and marijuana. The short-barreled long guns and destructive-device components were charged in Count One of the Indictment. Federal search warrants were then sought and obtained for the defendant's residence. Within the defendant's home, fourteen improvised grenades and nine devices labeled "M101" as well as components for making destructive devices were recovered. See Exhibit 1 (photographs of destructive devices found in residence). These items were charged in Count Three. The defendant was also charged with manufacturing destructive devices in Count Four.

An expert from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) found that the components in the car, as well as the devices and the components in the home, were a firearm and destructive devices under the law. Moreover, these items were in or could readily have been put in operating condition. The ATF further confirmed that the short-barreled long guns and the destructive devices were not registered.

In addition to the devices charged in Counts One and Three, investigators located a number of apparent destructive devices in the defendant's residence; these devices appeared to have all of the components of a destructive device and were composed of a fuse/detonator, fuel, and shrapnel. See Exhibit 2 (photograph of one such apparent destructive device). Moreover, some of the bomb-making components found in the defendant's home were deemed so dangerous that law enforcement personnel concluded that the risk posed by transporting such components was too high. Accordingly, law enforcement evacuated nearby homes, boarded nearby windows, and detonated the components on site. In addition, to the materials mentioned above, law enforcement also observed items which were consistent with regular drug use, e.g., marijuana, marijuana roaches, and a drug pipe. See Exhibit 3 (photographs of drug-related items).

### III. ARGUMENT

#### A. The Sentencing Guidelines

Even though the federal Sentencing Guidelines are advisory, the district court must "consult [the] Guidelines and take them into account when sentencing." United States v. Booker, 543 U.S. 220, 264 (2005). The district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 128 S. Ct. 586, 597 (2007). The district court, however, "may not presume that the Guidelines range is reasonable." Nelson v. United States, 129 S. Ct. 890, 892 (2009). While the "Guidelines should be the starting point and the initial benchmark," the district court must also "consider all of the § 3553(a) factors" in

3

determining the appropriate sentence.  Id.  Ultimately, the sentence imposed must meet a standard of reasonableness.  Booker, 543 U.S. at 260-61.

B.    PSIR Calculation

The Presentence Investigation Report ("PSIR") found that the defendant's total offense level was 25.  PSIR ¶¶ 35, 41.  With a total offense level of 25 and criminal history category of I, the advisory Guidelines range set forth in the PSIR is 57 to 71 months' incarceration.  Id. ¶ 75.

The defendant objected to the finding at paragraph 25 of the PSIR that his base offense level is 20.  Doc. No. 57 at ¶ 1.  Probation concluded that this was the appropriate base offense level based on to the fact that the defendant was a "prohibited person" at the time of the offenses of conviction.  The defendant argues that because he did not plead guilty to the offenses charged at Counts 2 and 5, which charge him with possessing a firearm while being an unlawful user of a controlled substance, he should not be considered a "prohibited person."  The government submits that the Court may nonetheless take the offense conduct at Counts 2 and 5 into account in determining the appropriate base offense level in this matter.

In any case, even if this Court were to completely disregard the conduct charged at Counts 2 and 5, this Court still has an adequate basis to find that the defendant was a "prohibited person" because the defendant admitted to regularly using marijuana.  See PSIR at ¶¶ 47 and 61).[1]  The conclusion that the defendant, as an unlawful user of a controlled substance, was a prohibited person is further supported by the fact that marijuana and paraphernalia, was observed in and

---

[1]    Case law holds that "personal information given during a routine presentence interview" admitting to drug use contemporaneous with the time of the offense satisfies the "unlawful user" test.  See, e.g., United States v. Jarman, 144 F.3d 912, 916 (6th Cir.1998); United States v. Nevarez, 251 F.3d 28, 30 (2d Cir.2001) (upholding enhancement when defendant conceded "that he used illegal drugs over almost a 30 year period-interrupted only by his arrest"); United States v. Dillard, 648 F. App'x 564, 567 (6th Cir. 2016).

recovered from the defendant's car and home.  See Exhibit 3.  Therefore, the government submits that the defendant's base offense level was properly calculated at 20.

        **C.**        **The § 3553(a) Factors Favor a Guidelines Sentence**

The sentencing factors codified at 18 U.S.C. § 3553(a) support imposing a sentence within the recommended Guidelines range of 57 to 71 months' incarceration.  The United States focuses on those factors that it believes are most germane to sentencing in this case.

        **1.**        **Nature and Circumstances of the Offense and History and Characteristics of the Defendant.**

The defendant stands convicted of possessing short-barreled rifles, multiple improvised destructive devices, and manufacturing destructive devices.  These are extremely serious crimes.  The defendant possessed and manufactured dangerous destructive devices that could inflict massive amounts of damage if detonated or fired.  In addition, the defendant possessed large quantities of bomb-making materials which were found virtually everywhere in his home.  These materials were so dangerous that law enforcement deemed the risk of accidental detonation too high to transport them and, thus, had to detonate them on site.  This on-site disposal could only take place after evacuating neighboring homes and boarding their windows as precautionary measures.  Moreover, while the risk of accidental detonation posed a substantial risk, an equally significant risk was purposeful detonation as these components would have allowed the defendant to manufacture many more such devices for purposeful detonation.  Indeed, the evidence found at his home reflects that he intended to amass weapons capable of quickly inflicting mass casualties[2] and that he had manufactured additional apparent destructive devices.  See Exhibit 2.

The PSIR notes that the defendant experienced substantial financial and employment setbacks, causing him significant stress.  PSIR at 13-15.  The defendant has no prior criminal

---

[2]      Evidence will be presented at sentencing supporting this inference.

history, was well-trained (having earned a master welder's and master pipefitter's certification), and was able to obtain good employment. PSIR at 14-15. Given these circumstances, the government submits that the defendant was well-positioned to address these stressors in a non-violent manner, rather than the charged conduct. Accordingly, a within-Guidelines range sentence is appropriate when considering the nature of the offenses and the defendant's history and characteristics. 18 U.S.C. § 3553(a)(1).

> 2. **Need for the Sentence to Reflect Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment.**

The seriousness of the crimes to which the defendant has pled guilty cannot be understated and weighs heavily in favor of imposing a sentence of imprisonment within the calculated Guidelines range. As set forth more fully above, the defendant manufactured and possessed weapons capable of quickly inflicting mass casualties. Moreover, the defendant possessed materials enabling him to manufacture multitudes of additional destructive devices, while such materials also posed a grave risk of accidental detonation. A sentence of incarceration will adequately reflect the seriousness of these offenses, provide just punishment for the crimes committed, and will ensure that the defendant has respect for the law. See 18 U.S.C. § 3553(a)(2)(A).

> 3. **Need for Sentence to Protect Public from Further Crimes Being Committed by Defendant and Deter Others' from Engaging in Similar Criminal Conduct.**

Without question, a Guidelines sentence of 57 to 71 months' incarceration is a significant amount of time to spend in the federal prison system. Such a significant sentence serves to both deter the defendant from engaging in future criminal conduct and protect the community from the defendant's conduct. Therefore, this factor also weights in favor of a guideline-range sentence.

## IV. CONCLUSION

For the foregoing reasons, the Court should sentence the defendant based on the advisory Guidelines and application of the 18 U.S.C. § 3553(a) factors to a period of incarceration between 57 to 71 months.

Dated: November 9, 2021

Respectfully submitted,

STEPHEN R. KAUFMAN
Acting United States Attorney

By: *s/ Cindy K. Chung*
CINDY K. CHUNG
Assistant U.S. Attorney
PA ID No. 317227

*s/ Jonathan D. Lusty*
JONATHAN D. LUSTY
Assistant U.S. Attorney
PA ID No. 311180

**CERTIFICATE OF SERVICE**

I hereby certify that I have served, on this date, a copy of the Government's Sentencing Memorandum to the defendant at:

<div style="text-align:center">
Kurt Cofano
Inmate Reg. No. 04811-509
Butler County Prison
202 S. Washington Street
Butler, PA 16001
</div>

<div style="margin-left:50%">
<u>s/ Cindy K. Chung</u>
CINDY K. CHUNG
Assistant U.S. Attorney
(412) 894-7397 (Phone)
Cindy.Chung2@usdoj.gov
PA ID No. 317227
</div>

Date: November 9, 2021